OPINION OF THE COURT
Thomas D. Buchanan, J.
In this action, plaintiff seeks several forms of relief, which include setting aside certain transfers of assets from defendant Pearl Mont Commons, LLC to defendant Geralynn Lynn. Plaintiff brought this action as judgment creditor pursuant to two judgments previously entered against Highgate Development Corp., Lynn Homes, Inc., and John W. Lynn. The two corporate entities owned certain real property on which plaintiff held mortgages to secure commercial loans made to them by plaintiff for construction of a housing development. John W. Lynn personally guarantied those loans. Plaintiff sued both corporations and Mr. Lynn on the notes, and seeks to collect on that judgment debt in this action. Mr. Lynn is either the sole owner or a co-owner of Pearl Mont. Plaintiff alleges that certain Pearl Mont assets were transferred to defendant Geralynn Lynn (the wife of John W. Lynn) fraudulently, as that term is used in the Debtor and Creditor Law. While the composition of Pearl Mont’s ownership has been one of the issues litigated in this action, resolution of that question is not necessary to address the motion at hand.
Defendant Geralynn Lynn has moved for summary judgment dismissing the complaint as against her on four stated grounds: (1) plaintiff failed to deliver an execution to the Rockland County Sheriff on its judgments against John W. Lynn, so that there is no lien upon the assets it seeks to obtain; (2) the preliminary injunction granted in this case on February 21, 2013 was based on erroneous facts; (3) the re-issuance of the preliminary injunction on December 9, 2013 was based on erroneous facts; and (4) circumstances have changed, in that plaintiff has now taken possession of the real property that served as collateral for the loans at issue and sold it to a third party. Plaintiff has opposed the motion. At oral argument, the court requested additional briefing, which both parties have submitted.
Defendant bears the initial burden of making a prima facie showing of her entitlement to judgment as a matter of law by submitting sufficient evidence to show that no material issues of fact exist (Winegrad v New York Univ. Med. Ctr., 64 NY2d *373 851 [1985]). If she makes the requisite showing, the burden of proof then shifts to plaintiff to show the presence of questions of fact requiring trial (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). The facts must be construed in a light most favorable to plaintiff as the non-moving party (see e.g. Hanna v St. Lawrence County, 34 AD3d 1146 [3d Dept 2006]).
A. Defendant’s Arguments
1. Delivery of Execution to Sheriff
In advancing her first argument, defendant appears to misread CPLR 5202 (a) to require issuance of an execution to the sheriff of the appropriate county prior to any enforcement action on a judgment. An execution is one of several enforcement devices made available by article 52 of the CPLR to a party holding a judgment against another. A careful reading of CPLR 5202 shows that the statute is meant to establish the priority of liens created by the various enforcement devices. The case cited by defendant (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121 [1975]) is simply an adjudication of priority among creditors using this statute. While it is true that the case at bar is about priority between plaintiff and defendant as to the ownership of personal property that once belonged to Pearl Mont, plaintiff does not rely on its status as an “execution creditor” of John W. Lynn in making its claims.
The first two causes of action seek a judgment against Pearl Mont based on plaintiff’s allegation that Pearl Mont is the alter ego of John W. Lynn. The next three causes of action are based on the Debtor and Creditor Law, each alleging that certain transfers were made from Pearl Mont to defendant that should be disregarded in the eyes of the law, because they operated fraudulently to deprive plaintiff of its ability to obtain those funds and apply them toward satisfaction of its judgment against John W. Lynn. The final cause of action seeks collection costs and attorneys’ fees in the event that actual intent to defraud, hinder or delay plaintiff’s collection efforts is found. While all of these claims rely upon the existence of plaintiff’s judgments against John W. Lynn, none of them require an execution lien upon personal property. Section 5202 (a) thus has no application here and defendant cannot make her prima facie showing on the first ground she asserts.
2. and 3. Propriety of Preliminary Injunction
Early in this action, plaintiff obtained a temporary restraining order which, among other things, prohibited Pearl Mont *374 from making any transfers of funds or tangible assets to defendant and prohibited defendant from accessing Pearl Mont bank accounts and credit cards. The temporary restraining order was converted to a preliminary injunction on February 21, 2013. At that time, the court was unaware of the fact that John W. Lynn had filed a petition in Bankruptcy Court in 2012. In an order issued on October 23, 2013, the U.S. Bankruptcy Court for the Southern District of New York held that plaintiff’s pursuit of the case at bar had violated the statutory automatic stay of collection efforts against John W. Lynn resulting from his bankruptcy filing, and that the preliminary injunction was therefore void. The preliminary injunction was reissued on December 9, 2013 after plaintiff informed the court that Mr. Lynn’s bankruptcy proceeding—and thus the automatic stay— had terminated.
The injunctive relief afforded to plaintiff was based on two main factors. First, Lynn Homes had also filed a petition in Bankruptcy Court, which raised the statutory automatic stay of any actions to collect debts from Lynn Homes and thus prevented plaintiff from foreclosing its mortgage on most of the subject property. Second, the housing development being constructed with the loan proceeds had floundered due to significant problems in securing required permits and did not appear to be a viable project. As this court stated in its decision and order of February 21, 2013, it appeared from the record developed by plaintiff that it would be “impracticable, if not impossible, for Plaintiff to realize meaningful reduction in the debt” by pursuing foreclosure. John W. Lynn’s interest in Pearl Mont appeared to be the only viable source for plaintiff to collect the judgment debt, which required its preservation pending the outcome of this case.
Defendant argues that the injunction was improperly issued and reissued because certain facts were not placed before the court by plaintiff. Specifically, defendant points out that on January 16, 2013, just prior to plaintiff’s initial application for an injunction in this case, plaintiff had obtained an order from the Bankruptcy Court lifting the automatic stay in the Lynn Homes bankruptcy, which would allow plaintiff to proceed with the foreclosure of its mortgages. That fact was not mentioned in plaintiff’s application papers. The removal of that impediment to plaintiff’s ability to foreclose on its mortgages also removed the first basis for the injunction. Moreover, plaintiff’s motion to lift the bankruptcy stay indicates that plaintiff was *375 already planning to pursue foreclosure, which could have undermined its argument that such an action would be largely fruitless.
As a general matter, defendant may have a colorable argument that the preliminary injunction was improperly issued, if not initially, then certainly when it was reissued in December of 2013. However, defendant’s argument is misplaced in the context of her summary judgment motion. While plaintiff was required to show a likelihood of success on its claims when applying for the injunction here, the CPLR specifically provides that the presence of unresolved issues of fact does not prohibit issuance of an injunction (CPLR 6312). A preliminary injunction has the function of preserving the status quo in order to prevent further perpetration of an alleged wrong while a case is pending (see e.g. Matter of Elmore v Mills, 296 AD2d 704 [3d Dept 2002]). The ultimate proof offered at trial determines the validity of the plaintiffs claims, not the presence of an injunction. In this case, the alleged wrong was dissipation of the assets of Pearl Mont through their fraudulent conveyance to defendant. The injunction was intended to prevent further transfer of assets while the validity of plaintiff’s claims was litigated. An improperly-issued injunction would not, by itself, merit dismissal of plaintiff’s claims. Therefore, defendant cannot make her prima facie showing of entitlement to a judgment on either the second or third grounds for her motion.
4. Foreclosure
The fourth ground for defendant’s motion is that plaintiff has, in the time since this action was commenced, pursued an action to foreclose its mortgage liens on the properties that served as collateral for the Lynn Homes/Highgate debt that was guarantied by John W. Lynn. That foreclosure action proceeded to judgment. The foreclosure sale was held, at which plaintiff purchased the subject property, and plaintiff then resold the property to a third party. Defendant argues that “Trasteo has received its bargained for collateral.” Defendant has perhaps stated her argument inartistically by mixing it with her attack on the preliminary injunction, but she makes one point clearly. Defendant believes that, having obtained the collateral for the loan, plaintiff should be satisfied. In the view of this court, defendant’s fourth argument raises the issue of election of remedies.
*376 B. Election of Remedies and RPAPL 1371
Defendant did not use the term “election of remedies” specifically in her motion papers and plaintiff did not address it in opposition, which is why the court asked for additional briefing on the issue. Contrary to plaintiff’s characterization in its supplemental papers, however, this is not an issue that the court raised sua sponte. It is an argument that has been raised unsuccessfully in several forms by defendant and by Pearl Mont throughout this case. Indeed, plaintiff’s counsel notes this fact in plaintiff’s initial responding papers on this motion. What has changed significantly is the backdrop against which the argument is made, in that plaintiff has now completed a foreclosure action and has sold the property. Those facts were unknown to the court prior to defendant raising them on this motion. Summary judgment “searches the record” and can result in an award of judgment to a party that did not seek it (see e.g. Perkins v Kapsokefalos, 57 AD3d 1189 [3d Dept 2008]). Because election of remedies is presented as an issue on this record, it should be addressed.
1. Statutory Provisions
The Real Property Actions and Proceedings Law contains an election-of-remedies rule in RPAPL 1301: *377 This provision is the current version of that found in former Civil Practice Act § 1078, which was enacted expressly to restrict the common-law rule allowing the plaintiff in a mortgage foreclosure action to seek alternative forms of relief (see First Natl. Bank & Trust Co. of Walton v Eisenrod, 263 App Div 227 [3d Dept 1942]). The effect of section 1301 is the same as that of the former statute. A foreclosure plaintiff “may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies” (Gizzi v Hall, 309 AD2d 1140, 1141 [3d Dept 2003]).
*376 “1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff of the county where he resides, if he resides within the state, or if he resides without the state, to the sheriff of the county where the judgment-roll is filed; and has been returned wholly or partly unsatisfied.
“2. The complaint shall state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part has been collected.
“3. While the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought.”
*377 A corollary to this rule is found in RPAPL 1371, which sets out the procedures for obtaining a deficiency judgment. In particular, section 1371 (3) provides: “3. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.” Case law tracing the legislative history of section 1371 shows that the additional burden it places on mortgagees was intentional. While its original intent was to remedy a practice whereby lenders made artificially low bids at foreclosure sales and then took inflated deficiency judgments against mortgagors, the statutory language is nonetheless direct and retains its validity (see e.g. Sanders v Palmer, 68 NY2d 180, 185-186 [1986]; Merchants Natl. Bank & Trust Co. of Syracuse v Wagner, 93 Misc 2d 224, 226-228 [Sup Ct, Oswego County 1978]).
On the face of the statutory provisions quoted above, there are clear requirements of a mortgage lender in a foreclosure case. If a mortgagee elects to proceed against a defaulting mortgagor by suing on the note, then no foreclosure action may be commenced unless the mortgagee is fully or partially unsuccessful in collecting the judgment on the note. If the mortgagee elects to proceed with a foreclosure, then no action may be commenced on the note without leave of the court in the foreclosure action. If the mortgagee does not bring a deficiency judgment application in the foreclosure action, then the proceeds of the foreclosure sale are deemed to be in full satisfaction of the mortgage debt.
The application of section 1371 (3) is the heart of the issue framed by the facts in this case. Plaintiff argues that section 1371 does not apply here because plaintiff is not seeking a deficiency judgment. In making this argument, plaintiff focuses on the last phrase of section 1371 (3), “no right to recover any deficiency in any action or proceeding shall exist.” Plaintiff *378 argues that the damages being sought in this action are entirely separate from the mortgage foreclosure, and because of that, neither of the defendants here is a “protected person” under section 1371. However, plaintiff ignores the language preceding the quote on which it focuses. Because the mortgage debt is deemed fully satisfied, the words “any deficiency” and “any action” have a much broader meaning than the one which plaintiff seeks to ascribe to them. As this court pointed out at oral argument, the opinion in TBS Enters, v Grobe (114 AD2d 445 [2d Dept 1985]) holds that when the mortgage debt is deemed satisfied, so also is the liability of the guarantor of that debt. This is an application of what has long been held to be “the elementary principal of the law of suretyship, that the payment or satisfaction of the principal obligation discharges the guarantor” (Union Trust Co. v Willsea, 275 NY 164, 166 [1937]). Because the judgments obtained by plaintiff against John W. Lynn as the guarantor of the mortgage loans at issue form the basis for this action, satisfaction of the mortgage debt would appear to remove the foundation for plaintiff’s claims here.
2. Case Law
Plaintiff seeks to distinguish the TBS case by noting the different time line involved. The plaintiff in TBS first foreclosed on the mortgaged property and then sought to bring an action against a guarantor of the note. In this case, plaintiff first brought an action to recover on the note and on a personal guaranty, obtaining judgment against both of the debtors and the guarantor. Plaintiff notes correctly that the particular fact situation here appears to be one of first impression. The court has spent considerable time researching the issue, but has found no case authority specifically addressing this particular chain of events. There are reported decisions, however, specifically applying the “full satisfaction” language of section 1371 and its predecessor, Civil Practice Act § 1083. In these cases, foreclosure plaintiffs who failed to move for a deficiency judgment were held to be unable to pursue a variety of other remedies. The list below is not exhaustive, but it is representative of a consistent theme.
Proceeding in chronological order, in Rossbach v Rosenblum (260 App Div 206 [1st Dept 1940]), the Court held that a money judgment for delinquent property taxes and interest (obtained prior to the foreclosure sale pursuant to causes of action in the same complaint as the foreclosure) was not enforceable. In *379 Pomperaug Realty Corp. v Schulte Real Estate Co., Inc. (182 Misc 1080 [Sup Ct, NY County 1944]), the plaintiff was precluded from seeking the return of other collateral sold by the mortgagor after the foreclosure sale. In Band Realty Co. v North Brewster, Inc. (59 AD2d 770 [2d Dept 1977]), the plaintiff was precluded from recovering for waste allegedly committed on the property during an appeal from the foreclosure judgment. In Merchants Natl. Bank & Trust Co. of Syracuse v Wagner, the plaintiff was precluded from foreclosing on a mortgage given by a guarantor of the main mortgage. In the TBS case discussed above, the plaintiff was precluded from pursuing an action at law on a personal guaranty of the mortgage debt. In what is perhaps the closest factual parallel to the case at bar, Mariani v J.K.I.F. Mgt. (158 Misc 2d 938 [Sup Ct, NY County 1993]), the plaintiff was precluded from proceeding to enforce a judgment by confession given by a guarantor as further collateral for the mortgage debt. The rationale for the holdings in all of these cases was that the mortgage debt was deemed fully satisfied, so that there was nothing left for the mortgagee to pursue.
The court’s research has also revealed cases where the rule of section 1371 (3) has not been applied to preclude further action by a mortgagee. Again proceeding chronologically, in Robert J. Elser, Inc. v Keeffe (198 AD2d 339 [2d Dept 1993]), the parties had specifically agreed as to the order and timing of the sale of several properties securing the debt and a guaranty, so that the defendant was held to be estopped from asserting section 1371 after the first of those sales. In Bank Leumi Trust Co. of NY. v Andrews (254 AD2d 445 [2d Dept 1998]), the mortgage at issue provided that it secured only a specified part of the debt and the mortgagee received a full recovery of that amount through the foreclosure process, so that there was no deficiency. In Washington Mut. Bank, F.A. v Allstate Ins. Co. (48 AD3d 554 [2d Dept 2008]), the mortgagee was enjoined by the specific terms of the defendant’s bankruptcy discharge from pursuing a deficiency judgment. In Hometown Bank of Hudson Val. v Colucci (127 AD3d 702 [2d Dept 2015]), a foreclosure action was brought to foreclose mortgages securing three loans comprising the financing package for a residential subdivision. By stipulation, the action was discontinued “without prejudice” as to one of the mortgage loans. The lender was later allowed to maintain an action against the guarantor of that loan. In each of these cases, the particular factual setting either prevented or obviated the application of section 1371.
*380 The record here, however, does not reveal a similar factual situation that would render section 1371 inapplicable. By plaintiff’s own description, the foreclosure of its mortgage on the properties at issue followed the normal course and resulted in a foreclosure sale. There is nothing in the record here to indicate that the foreclosure action brought by plaintiff did not encompass the loan guarantied by John W. Lynn. There is no agreement in the record between plaintiff and any of the parties to the mortgage transaction that would prevent defendant from asserting section 1371.
Plaintiff has cited the Washington Mut. Bank, F.A. v Allstate Ins. Co. case for the proposition that John W. Lynn’s bankruptcy filing prevented plaintiff from pursuing a deficiency judgment. The record shows, however, that plaintiff was not precluded by either the 1978 Bankruptcy Code or a bankruptcy decree from applying for a deficiency judgment. While Lynn Homes and John W. Lynn each filed bankruptcy petitions, Highgate Development did not, leaving a defendant that would have been legally subject to a deficiency judgment. It is worth noting that the Washington Mut. opinion points out that, absent the Bankruptcy Court’s directives, the operation of section 1371 to deem the mortgage debt satisfied would have extinguished any insurable interest held by the mortgagee (Washington Mut. Bank, F.A. v Allstate Ins. Co., 48 AD3d at 554)—a point that is consistent with the line of cases applying section 1371 cited above by this court.
Nor does the fact that plaintiff’s judgments predate the foreclosure action preclude application of section 1371 (3). Events occurring after the docketing of a judgment can affect the vitality of that judgment. For example, plaintiff freely concedes that John W. Lynn’s receipt of a bankruptcy discharge precludes collection efforts against him personally. Judgments can also lose their res judicata or collateral estoppel effect (see e.g. Citizens of Accord v Twin Tracks Promotions, 236 AD2d 665 [3d Dept 1997]; Hoopes v Bruno, 128 AD2d 991 [3d Dept 1987]). From this court’s research, it appears that section 1371 (3) operates in much the same way that satisfaction of a judgment by one tortfeasor operates to discharge the liability of all joint tortfeasors (see Matter of Benedictine Hosp. v Glessing, 90 AD3d 1383 [3d Dept 2011]). The satisfaction of the mortgage debt effectively eviscerated the judgments against John W. Lynn on which this action is based.
*381 3. Practicalities
Perhaps plaintiffs most compelling argument is that it would have been illogical and pointless to seek a deficiency judgment against Highgate for two reasons: (1) plaintiff already had a judgment against Highgate and (2) Highgate had no assets “other than partially completed roads that had been foreclosed on.” There is logic to this argument. Why pursue what appears to be a duplicate judgment against a defendant that has no money? Unfortunately for plaintiff, the answer is straightforward. The Real Property Actions and Proceedings Law says that a foreclosing mortgagee must do so.
In sum, under RPAPL 1371 (3), the consequence of failure to seek a deficiency judgment is the elimination of any further claim by the mortgagee. In this case, that rule yields a result which the court freely acknowledges to be harsh. Plaintiff will forgo damages in excess of $1 million. The statute, however, is clear. The court sees no ambiguity on the face of section 1371 and none has been revealed by reading case law applying the statute. Nor is there anything in the record to prevent its application here. The court is therefore bound to apply the statute as written, which means that plaintiffs failure to obtain a deficiency judgment in its foreclosure proceeding against the subject property resulted in the mortgage debt being deemed fully satisfied by the foreclosure sale. Therefore, the guaranty given by John W. Lynn was also satisfied, eviscerating plaintiffs judgment against him and leaving no obligation remaining to serve as a foundation for plaintiffs claims here. This action must be dismissed.
The parties’ remaining contentions have been considered, but do not alter the outcome of this motion. Therefore, in consideration of the foregoing, it is hereby ordered that defendant’s motion for summary judgment is granted and the complaint in this action is hereby dismissed as against all defendants.